UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MARTIA MOFFETT                                        PLAINTIFF

VS.                          CIVIL ACTION NO. 3:11CV262TSL-MTP

MISSISSIPPI DEPARTMENT OF                             DEFENDANT
MENTAL HEALTH

                    MEMORANDUM OPINION AND ORDER

     This cause is before the court on the motion of defendant
Mississippi Department of Mental Health (DMH) for summary judgment
pursuant to Rule 56 of the Federal Rules of Civil Procedure.
Plaintiff Martia Moffett has responded in opposition to the motion
and the court, having considered the memoranda of authorities,
together with attachments, submitted by the parties, concludes the
motion is well taken and should be granted.

     This lawsuit is the second employment discrimination action
plaintiff has brought in this court against her former employer,
DMH.  In March 2007, plaintiff filed a charge of race
discrimination with the Equal Employment Opportunity Commission
(EEOC), and on August 31, 2007, after receiving a notice of right
to sue, she filed suit in this court, Civil Action No.
3:07CV517DPJ-FKB, alleging that DMH discriminated against her on
account of race when it failed to pay her as much as her white
counterparts.  MDH was granted summary judgment on June 23, 2009.

     In the present lawsuit, plaintiff claims that since filing
her March 2007 EEOC charge, MDH has continually retaliated against

her, most recently and significantly by demoting her in October 2009 and then terminating her employment in December 2009. Moffett also asserts a state law claim of wrongful (retaliatory) termination, alleging she was fired after she brought to the attention of the Mississippi Attorney General's (AG's) office several instances of illegal activity at Ellisville State School.[1] MDH denies plaintiff was demoted or terminated because of any complaints to the Attorney General's office.  Rather, according to defendant, she was initially demoted after receiving a series of reprimands for breaching agency policies and was terminated in December 2009 on account of these multiple reprimands together with her refusal to attend a performance assessment meeting related to her demotion.

MDH seeks summary judgment on plaintiff's federal claims, contending plaintiff cannot establish her *prima facie* case and, in any event, cannot demonstrate pretext in the face of its legitimate non-discriminatory reason for her demotion and termination.  It seeks summary judgment on her state law claim because there is no proof that anyone at DMH knew of plaintiff's reports to the AG's office.

---

[1]    Plaintiff had also alleged claims for race discrimination and intentional infliction of emotional distress, but in response to defendant's motion for summary judgment, she has conceded those claims.

2

The record before the court, construed in favor of plaintiff, demonstrates the following.  Plaintiff became employed by DMH in 1990 as a social worker.  In 2004, she was promoted to Quality Assurance Director at Ellisville State School (ESS).  Following her promotion, plaintiff complained of a perceived pay disparity between her and two white employees whom she deemed to hold similar positions.  After unsuccessfully pursuing a claim regarding the disparity with the Mississippi State Personnel Board (MSPB), on March 28, 2007, plaintiff filed a charge of discrimination with the EEOC.  The EEOC issued a notice of right to sue and on August 31, 2007, plaintiff filed her first lawsuit which was dismissed via summary judgment on June 23, 2009.

Prior to her promotion in 2004, plaintiff had received one written reprimand in 1995.  After her promotion, plaintiff was the subject of numerous employee complaints and disciplinary actions. First, on November 27, 2006, while plaintiff was still pursuing her pay disparity claim before the MPSB, she received a written reprimand from Suzie Lassiter, then Director of ESS, for what Lassiter described as plaintiff's willful attempt to submit to an MSPB judge client staffing schedules which included personal information about clients, which constituted a breach of the clients' right to confidentiality and a Group Two offense.[2]

_____

[2]   Pursuant to the Mississippi State Employee Handbook, of which the court takes judicial notice, accumulation of "two Group Two written reprimands within a one-year period may result in

Then, in May 2009, after her transfer a few months earlier to
the position of director of the Paul D. Cotten (PDC) Unit at ESS
(which plaintiff regarded as demotion in status but not pay),
plaintiff was counseled by ESS Human Resource Director Randell
Hendrix regarding numerous complaints he had received from
employees about Moffett's management style and demeaning attitude.
Moffett denied all of the allegations.  In a memo authored by
Hendrix regarding the meeting, he stated he was unable to conclude
that plaintiff had definitely engaged in harassment of employees
within the meaning of that term in the State Personnel Board
handbook, i.e., harassment with regard to race, color, age,
religious creed, sex, national origin, disability or political
affiliation or activity, but he observed that Moffett's transition
to the PDC unit had been more difficult than was desirable.  He
recommended that Moffett's actions be monitored for future
complaints of harassment and suggested to Moffett that she attend
a sensitivity training program.  Moffett declined to do so, and
Moffett's subordinates continued to complain about her harsh
attitude toward them.

According to plaintiff's deposition testimony, some time in
either July or August 2009, she became aware of fraudulent billing

---

demotion or dismissal," while commission of one Group Three
offense "may be disciplined by the agency with a written reprimand
and/or may result in suspension without pay for up to thirty
working days, demotion, or dismissal."

practices with regard to speech therapy services for ESS's clients.  She met with ESS Assistant Director Rinsey McSwain and Hendrix to report that information she gathered appeared to indicate that document falsification had been occurring.  Moffett testified that after McSwain reviewed the documentation which Moffett presented to him at the meeting, McSwain agreed with Moffett's assessment.  McSwain then passed the file folder of information to Hendrix, who stated he would look at it.

After this meeting, and about two months after the dismissal of her lawsuit, on August 14, 2009, plaintiff received a second written reprimand issued by McSwain.  According to this reprimand, designated a Group Two offense, on August 5, 2009, despite an email from McSwain directing Moffett to amend language in a report which Moffett had submitted to Risk Management, plaintiff resubmitted the report with the offending language[3] and failed to resubmit the corrected, revised report until August 10, 2009.

According to plaintiff, a week later, on August 22, she was escorted off campus without explanation, and then on August 28 was advised she had been placed on administrative leave, again without explanation.  On October 6, 2009, while she was on administrative

---

[3]  In a July 29, 2009, response to an inquiry from the Risk Management Department, Moffett had stated that she would "attempt to assure" that clients were properly supervised during bath time. McSwain directed that plaintiff remove the word "attempt" from her response.

leave, Moffett received a pre-termination notice which apprised
her that "on October 21, 2009, or as soon thereafter as possible,
a decision will be made which could result in the termination of
your employment."  The notice advised that her termination was
being considered on the basis of both the instances of misconduct
for which she had previously been reprimanded or counseled and
five additional written reprimands which were issued
contemporaneously with the pre-termination notice.

One of those reprimands cited Moffett with treating her co-
workers, subordinates and superiors in a manner which evidenced a
"severe lack of professionalism, lack of emotional maturity, lack
of ability to discern the trivial from the important and vice
versa, and a lack of the ability to effectively supervise
employees or receive supervision," a Group Three offense.  Another
reprimand, also a Group Three offense, charged Moffett with
issuing seven unwarranted written reprimands to her employees in
retaliation for the reprimand which she received on August 14.
According to the reprimand,

> During your tenure as Bureau Director I/Director of Paul
> D. Cotten ICF/MR Unit from February 2, 2009 to August
> 14, 2009, you initiated no written reprimands.  On
> August 14, 2009, you received a written reprimand for
> insubordination.  Subsequently, you initiated seven (7)
> reprimands for alleged incidents which, when
> investigated, were found to be false or misconstrued.
> Such actions constitute a pattern of conduct consistent
> with retaliation against subordinate employees in
> response to your receipt of discipline and are of such
> nature that to continue you in your supervisory position

would constitute negligence with regard to Ellisville
State School's duties to its employees.

Moffett also received a reprimand for insubordination, a Group Two

offense, ostensibly based on misconduct that "occurred when

[Moffett] [was] told to clear with [her] supervisor all

disciplinary actions [she] intended to issue, [she] subsequently

told two staff members not to share with [her] supervisor or human

resources any disciplinary actions [she] intended to issue."

Moffett received two other reprimands for Group Three

offenses.  One was for failing to perform necessary work

by failing to forward dock notifications in a timely
manner, failing to complete and forward accident and
injury reports in a timely manner, failing to schedule
programming to encourage the habilitation process,
failing to forward disciplinary matters in a timely
manner and failing to organize and maintain staff
resources to perform these tasks.

The last was for falsification of records, and specifically for

adding derogatory comments to an employee's performance evaluation

after the employee had signed off on the document.

On October 21, 2009, Moffett was not terminated, but rather

was demoted to the position of social worker, with a resulting

$20,000 decrease in pay.  According to the demotional transfer

notice, the demotion was based on the first four reprimands

outlined above.  Two days later, on October 23, 2009, plaintiff

filed a second charge with the EEOC, contending that even before

she had received her notice of right to sue letter in 2007,

7

defendant had begun to retaliate against her by removing her from committees, issuing unwarranted reprimands, steadily degrading her work and demoting her to the position of social worker.

On December 7, 2009, plaintiff received a second pre-termination notice.  This notice provided that on or around December 22, 2009, a decision would be made which could result in the termination of her employment based on a December 7, 2009 reprimand and the other accumulated disciplinary offenses.  The December 7, 2009 reprimand, a Group Two offense, was based on Moffett's failure or refusal to follow a supervisor's instruction.  Specifically, the reprimand advised:

> This act occurred on December 2, 2009, when you were given a directive by the Assistant Director to meet with her and your former supervisor to close out your performance appraisal [related to Moffett's tenure as director of the PDC unit]; however, you repeatedly refused to do so.

On December 22, 2009, after meeting with Moffett to allow her an opportunity to explain her side of the story, plaintiff's employment was terminated by ESS Director Renee Brett, based on the December 7, 2009 reprimand together with all of the other reprimands issued to Moffett, save the October 6 reprimand for falsification of documents.  On February 2, 2010, plaintiff amended her EEOC charge to allege that she was terminated in retaliation for her 2007 charge.

DMH contends summary judgment is appropriate as to the Title VII retaliation claim because plaintiff cannot demonstrate a causal connection between her protected activity and DMH's actions and thus cannot establish a *prima facie* case of retaliation.  It further reasons that, in any event, Moffett has failed to counter DMH's legitimate nondiscriminatory reasons for its actions.

"Title VII protects employees from retaliation for engaging in an activity protected by Title VII."  Dixon v. Moore Wallace, Inc., 236 Fed. Appx. 936, 937, 2007 WL 1686973, 1 (5th Cir. 2007). To determine whether summary judgment is appropriate, the court employs the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  Under the McDonnell Douglas burden-shifting framework, the plaintiff must make out a *prima facie* case of retaliation, which requires that plaintiff show that (1) she engaged in activity protected by Title VII, (2) that an adverse employment action occurred and (3) that a causal link existed between the protected activity and the adverse action.  Raggs v. Mississippi Power & Light Co., 238 F.3d 463, 471 (5th Cir. 2002). If the plaintiff establishes a *prima facie* case, the burden "shifts to the defendant to demonstrate a legitimate [nonretaliatory] purpose for the employment action."  Everett v. Central Mississippi, Inc. Head Start Program,  444 Fed. Appx. 38, 43, 2011 WL 4716317, 4 (5th Cir. 2011).

Once the defendant satisfies this burden, the burden then
shifts back to the plaintiff to "create a genuine issue of
material fact ... that the defendant's reason is not true, but is
instead a pretext for [retaliation]." Everett, 2011 WL 4716317,
at 4 (internal citations and quotations omitted). As the Fifth
Circuit observed in Laxton v. Gap, 333 F.3d 572, 578 (5th Cir.
2003):

> To carry this burden, the plaintiff must produce
> substantial evidence indicating that the proffered
> legitimate nondiscriminatory reason is a pretext for
> discrimination. See Reeves [v. Sanderson Plumbing
> Prods., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106,
> 147 L. Ed. 2d 105 (2000)]. The plaintiff must rebut
> each nondiscriminatory reason articulated by the
> employer. Wallace [v. Methodist Hospital System, 271
> F.3d 212, 220 (5th Cir. 2001)]. A plaintiff may
> establish pretext either through evidence of disparate
> treatment or by showing that the employer's proffered
> explanation is false or "unworthy of credence." Id.;
> Reeves, 530 U.S. at 143, 120 S. Ct. at 2106. An
> explanation is false or unworthy of credence if it is
> not the real reason for the adverse employment action.
> See Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893,
> 899 (5th Cir. 2002). Evidence demonstrating that the
> employer's explanation is false or unworthy of credence,
> taken together with the plaintiff's prima facie case, is
> likely to support an inference of discrimination even
> without further evidence of defendant's true motive.
> Id. at 897; Russell [v. McKinney Hosp. Venture, 235 F.3d
> 219, 223 (5th Cir. 2000)].

In examining pretext, the question is "not whether [DMH's]
proffered reason[s] [were] incorrect reason[s] for her [demotion]
and discharge." Laxton, 333 F.3d at 579. Rather, the court's
inquiry is "'whether [DMH's] perception of [Moffett's]
performance, accurate or not, was the real reason for her

[demotion] and termination.'" <u>Evans v. City of Houston</u>, 246 F.3d 344, 355 (5th Cir. 2001) (<u>quoting</u> <u>Shackelford v. Deloitte & Touche, LLP</u>, 190 F.3d 398, 408-09 (5th Cir. 1999)).

As set forth above, while DMH does not dispute that Moffett engaged in protected activity and that the demotion and termination constitute adverse employment actions, it does contend that because the demotion and discharge occurred more than two years after plaintiff's 2007 charge of race discrimination, Moffett cannot establish a causal connection between her protected activity and the materially adverse employment actions.  On this point, plaintiff urges that she can establish the causation element through evidence of a series of more minor retaliatory acts, and she states that, in any event, she "could still show causation between her October 23, 2009 charge of discrimination and her December 22, 2009 termination," presumably because of the close temporal proximity of the filing of the charge to the termination.

In the court's opinion, even assuming for the sake of argument that a plaintiff can establish a causal link via "evidence of a series of more minor retaliatory acts" and that Moffett has done so here, as defendant points out, Moffett has failed to create an issue of fact as to whether defendant's legitimate non-discriminatory reasons for her demotion and discharge were pretextual.

As to her demotion, Moffett, apparently taking the position that defendant's sole basis for her demotion was complaints by co-workers, claims that a genuine issue of material fact exists because Hendrix admitted to her in the May 18, 2009 meeting that he had found nothing to substantiate her co-workers' complaints. However, even assuming that Hendrix admitted on May 18, 2009 that he could not substantiate her co-workers' complaints of harassment, this in no way demonstrates that the October 2009 reprimand based on Moffett's continued mistreatment of her co-workers was false.  The court would also note that while Hendrix's May 18, 2009 memo indicated that he did not find harassment *as defined by the State Employee handbook*, he did note that personality conflicts existed and advised Moffett to attend sensitivity training, which she declined.  Plaintiff does not dispute that after the May 18 meeting, complaints about her harsh treatment of her co-workers continued.

Finally, plaintiff's reprimand for unprofessional treatment of co-workers was but one of the four reprimands identified by defendant as the basis for her demotion; and plaintiff has not addressed in any way the remaining offenses.  In sum, plaintiff has not shown that any of the reasons given for her demotion is false.  Accordingly, as plaintiff has failed to create an issue of fact on the question of pretext as to her claim for retaliatory demotion, summary judgment on this claim is appropriate.

12

Regarding her termination, Moffett has undertaken to refute what she characterizes as defendant's legitimate non-discriminatory reason for her termination.  However, her characterization of defendant's reason is not accurate, and for that reason, her response is insufficient.  According to plaintiff, defendant asserts it terminated her "for being insubordinate to her supervisor [Cindy Cooley] in refusing to attend a meeting with the Assistant Director [McSwain] and ... [Cooley]."  Plaintiff maintains that she was not, in fact, insubordinate to her supervisor because at the time she was directed to meet with Cooley, Cooley was no longer her supervisor.  Plaintiff admits she refused to meet with Cooley without a witness of her choice also being present, but she denies that her refusal constituted insubordination.[4]  In fact, however, Moffett was not reprimanded for being insubordinate to Cooley.  Instead, she was reprimanded by her then-supervisor, Althea Fisher, for refusing to obey a directive from ESS Assistant Director McSwain that Moffett meet with McSwain and Cooley to close out her performance appraisal related to her previous assignment as director of the PDC Unit.

---

[4]     Plaintiff requested that Althea Fisher, her then-supervisor, be permitted to attend the meeting as her witness, since Cooley "had lied on [her]" in the past.  Cooley and McSwain refused her request.  McSwain offered to be a witness, but plaintiff refused this offer and plaintiff declined to meet with Cooley if Fisher was not permitted to attend.

While plaintiff does not dispute that McSwain had the
authority to require her to meet with Cooley to close out her
performance appraisal,[5] plaintiff has denied that McSwain asked
her to meet with Cooley on the occasion in question.  However,
Fisher, who issued the reprimand, was admittedly present
throughout the encounter at issue, and Fisher has testified
plainly that in her presence, McSwain directed Moffett to meet
with Cooley and McSwain, and that plaintiff refused to do so
because they would not allow Fisher to attend the meeting as
plaintiff's witness.  Plaintiff has offered no evidence that would
tend to show that Fisher did not, in fact, believe that this
occurred in precisely the manner described in her reprimand of
plaintiff, which, again, stated:

> This act occurred on December 2, 2009, when you were
> given a directive by the Assistant Director to meet with
> her and your former supervisor to close out your
> performance appraisal [related to Moffett's tenure as
> director of the PDC unit]; however, you repeatedly
> refused to do so.

More pertinently, plaintiff has offered no evidence to show that
Renee Brett, Director of ESS and the individual who made the
decision to terminate plaintiff's employment, did not in good

---

[5]   The court notes that in response to the motion for summary
judgement, plaintiff, citing her April 2012 affidavit, asserted
that she could not have been insubordinate to McSwain because she
was not in her chain of command.  However, in her response to the
motion to strike and citing her May 2012, plaintiff recites that
this statement was in error and that she intended to state that
"Ms. Cooley was not in my line of supervision when the Defendant
claimed that I refused to attend the meeting."

faith believe Fisher's account of the events which precipitated the reprimand.  See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995) (finding that "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive").[6]  As such, summary judgment is likewise appropriate as to this claim.

The court now turns to the state law claim under the Whistleblower Act, Miss. Code Ann. § 25-9-171 et seq.  The record evidence shows that in September 2009, while plaintiff was on administrative leave, she contacted the AG's office to report misconduct she believed had occurred at ESS.  In meetings with two different AG employees, she complained of the following: (1) a speech pathologist had been directed to fraudulently report that services had been provided when they, in fact, had not been; (2) it had been fraudulently reported that pap smears were performed on patients who had not, in fact, been administered pap smears; (3) physical therapy services were being performed with non-licensed aids and being falsely documented; (4) irregularities were occurring with regard to psychiatric services; and (5) an

---

[6] The court also notes that while plaintiff has denied that McSwain directed plaintiff to meet with her and Cooley, she has presented in support of her response the transcript of hearing before the Mississippi Employment Security Commission in which several witnesses, including Fisher, related that on December 2, 2009, McSwain directed Moffett to meet with her and Cooley and denied Moffett's request that Fisher act as a witness to the meeting.

employee had provided false information to a DMH surveyor regarding the death of a client which occurred at ESS.

DMH has presented the affidavit of AG investigator Randolph Brown who states that in a meeting with Moffett on September 24, 2009, she complained of fraudulent billing with regard to speech therapy services in response to which Brown asked the Medicaid Fraud Control Unit to analyze the speech therapist's billing activity.  When the analysis revealed no irregularities, Brown discontinued his investigation.  Significantly, Brown stated that he did not contact anyone at ESS about Moffett's complaints.

The Whistleblower Act protects state employees from reprisal or retaliatory action for reporting improper governmental action to a state investigative body, such as the AG's office.  The statute defines a "whistleblower" as an

> employee who in good faith reports an alleged improper governmental action to a state investigative body, initiating an investigation.  For purposes of the provisions of this act, the term "whistleblower" also means an employee who in good faith provides information to a state investigative body, or an employee who is believed to have reported alleged improper governmental action to a state investigative body or to have provided information to a state investigative body but who, in fact, has not reported such action or provided such information.

Miss. Code Ann. § 25-1-171(j).  The Act requires the investigatory agency to keep the identity of the whistleblower confidential and allows a "whistleblower" who is subjected to reprisal or retaliatory action as a "direct result" of her whistleblowing to

recover not only back pay and compensatory damages but also reinstatement to her former position.  See Miss. Code Ann. §§ 25-1-172(4), 173(2)-(3), 175.

Here, DMH argues that summary judgment is appropriate on plaintiff's claim under the Whistleblower Act on the basis that plaintiff cannot establish that her termination was the "direct result" of her whistleblowing because no one at DHM was even aware of her report to the AG's office.  In response to the motion, Moffett has presented an April 2012 affidavit in which she asserted that in August 2009, she told three individuals at ESS, including McSwain, that if ESS did not address the fraud relating to the speech therapist, she would report the matter to the AG's office.  Plaintiff submits that her affidavit creates a fact issue as to whether DMH was aware that she intended to complain to the Medicaid Fraud Division of the AG's office in the event the facility was unwilling to address her concerns.  Defendant has moved to strike plaintiff's April 2012 affidavit on the basis that it directly contradicts, without sufficient explanation, plaintiff's deposition testimony in order to manufacture a disputed issue of fact where none exists.  More particularly, pointing to plaintiff's March 14, 2012 deposition testimony, DMH maintains that the record before the court establishes that Moffett did not tell anyone at ESS that she had made, or that she intended to make a report of allegedly fraudulent activity to the

17

AG's office, and that it further establishes without contradiction that the AG's office did not contact anyone at the school. For her part, plaintiff does not deny that in her deposition testimony, she did not mention that she had threatened to report the alleged fraudulent practices; instead she contends there is no contradiction.

"It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996) (citations omitted). Therefore, if "an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment. Id. at 496 (citations omitted). However, a non-movant opposing summary judgment "cannot manufacture a disputed material fact where none exists." Albertson v. T.J. Stevenson & Co., Inc., 749 F.2d 223 (5th Cir. 1984). In the event the court finds a direct contradiction, and no explanation is offered or the proffered explanation is insufficient to create a genuine issue of material fact, it may disregard the affidavit. Doe v. Dallas Indep. Sch. Distr., 220 F.3d 380, 386-87 (5th Cir. 2000).

During plaintiff's March 14, 2012 deposition, the following exchange occurred between defense counsel and plaintiff:

18

> Q: Now who higher up than you did you report these
> alleged fraudulent billing acts?
> A: Rinsey McSwain.
> Q: Anyone else?
> A: The human resource director was there the day that I
> gave Rinsey McSwain the information.
> Q: And that would have been who?
> A: Randel Hendrix.
> Q: Randel Hendrix.  So Randel and Rinsey McSwain?
> A: Yes.
> Q: Anyone else?
> A: No.
> Q: And what did you report to Ms. McSwain and Mr.
> Hendrix?
> A: That according to the information and what I had
> perceived, it appeared that there had been some
> falsifying documentation.  Rinsey McSwain looked at the
> information.  She said, "Yes sir, it has," and she
> passed the file to Randel Hendrix.
> Q: And what did he say?
> A: He would have to take it and look at it.
> Q: Did you tell them anything else?
> A: That was it.

Per her April 2012 affidavit, plaintiff states the following:

> [I]n August 2009, I spoke with Ms. Rinsey McSwain in a
> telephone call concerning Dr. Saniga being upset, scared
> and intimidated by Ms. Cooley about Mr. Caple's
> instruction to falsify patient progress notes.  I told
> Ms. McSwain that I had to protect my social work
> license, and that if the facility did not address this
> obvious fraudulent behavior I would be reporting it to
> the medicaid fraud division.

In response to defendant's motion to strike, plaintiff denies that

her first affidavit contradicts her second, stating in a second

affidavit that "the referenced deposition testimony is in regard

to an in person meeting that I had with Ms. McSwain, while the

affidavit testimony is in regard to a separate telephone

conversation that I had with Ms. McSwain."

19

In the court's opinion, DMH is entitled to summary judgment
on this claim regardless of whether the court considers
plaintiff's April affidavit.[7]  As defendant correctly points out,
the Whistleblower Act provides protection for an employee "who in
good faith *reports* an alleged improper governmental action to a
state investigative body," Miss. Code Ann. §§ 25-9-171(j)
(emphasis added), and it prohibits retaliation against any public
employee because "the public employee ... *provided information* to
a state investigative body...," id. at § 25-9-173(2) (emphasis
added).  It does not prohibit reprisal against employees for what
they *may* report to an investigative body as opposed to what they
actually do report with the employer's knowledge of it.  Defendant
cannot have retaliated against plaintiff in violation of the Act
unless it was unaware that she was a whistleblower.  Thus, even if
plaintiff had threatened to report alleged fraudulent activity,
there is no evidence to show that defendant knew, or had reason to
know that she had followed through with this threat; and as such,
plaintiff has failed to establish that she was subjected to

---

[7]      Were the court bound to resolve the issue, it would
likely conclude that the affidavit should be stricken.  Defense
counsel's last question of plaintiff, "Did you tell them anything
else?", did not purport to limit plaintiff's expected response to
a specific meeting but rather afforded plaintiff the opportunity
to disclose any other conversations she had with defendant's
agents regarding the allegedly fraudulent conduct.  Plaintiff has
not offered a sufficient explanation as to why she did not reveal
the claimed phone conversation at that time.

reprisal or retaliatory action as a "direct result" of her whistleblowing.  Accordingly, summary judgment is appropriate as to this claim.

Based on the foregoing, it is ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 28th day of June, 2012.


                                        /s/ Tom S. Lee
                                        UNITED STATES DISTRICT JUDGE